**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL ANTHONY ACINELLI, Jr., | ) | No. ED CV 13-381-AB (PLA) |
| Plaintiff, | ) | |
| v. | ) | **FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| LT. BLACKMON, et al., | ) | |
| Defendants. | ) | |

This Report and Recommendation is submitted to the Honorable Andre Birotte, Jr., United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the Magistrate Judge recommends that defendant's Motion for Summary Judgment be granted and that the case be dismissed.

/
/
/
/
/
/

# I.

## **BACKGROUND**

On May 8, 2013, plaintiff, a California prisoner presently incarcerated at the California Correctional Institution at Tehachapi ("CCI Tehachapi"), filed a pro se civil rights action herein pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, after being granted leave to proceed without prepayment of the full filing fee. Plaintiff's claims arise from actions that took place beginning in February 2012, while he was incarcerated at the California Institute for Men ("CIM") in Chino. Plaintiff's First Amended Complaint ("FAC"), the operative pleading herein, was filed on June 20, 2013. The only named defendant in the FAC is Lieutenant Blackmon, "Supervisor of Job Assignments" at CIM. (FAC at 3).[1]

The Court issued an Interim Report and Recommendation on March 5, 2014 (see Docket No. 28), recommending that all claims apart from plaintiff's claim pursuant to the Eighth Amendment against defendant Blackmon in his individual capacity be dismissed without leave to amend. The then-assigned District Judge adopted the interim Report and Recommendation in full on April 10, 2014. (See Docket No. 30). In his remaining claim, plaintiff alleges that defendant Blackmon violated the Eighth Amendment when he "willfully and knowingly assign[ed] plaintiff to [a] job as [second] watch dorm porter after being made aware of [plaintiff's] medical limitations and restrictions." (FAC at 6). Plaintiff alleges that he was assigned to the position of "[second] watch dorm porter" on February 25, 2012. (Id. at 4, 7). Plaintiff attempted to perform the duties of the

---

[1] The Court notes that plaintiff's original Complaint, which was dismissed with leave to amend on May 23, 2013, purported to also raise a claim against Appeals Coordinator M. Gill alleging that Gill incorrectly "screened out" grievances that plaintiff had filed about his work assignment. (See Complaint at 3-5). In the Court's Order Dismissing Complaint with Leave to Amend, plaintiff was advised that his allegations were insufficient to state a claim against Gill based on that defendant's participation in the administrative grievance procedure. (See Docket No. 11 at 8-9). Plaintiff did not name Gill as a defendant in his FAC, but nothing in the record that is now before the Court alters the Court's finding that plaintiff's allegations were insufficient to state a federal civil rights claim against Gill based on the screening of plaintiff's administrative appeals. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (an inmate has "no legitimate claim of entitlement to a grievance procedure").

1 assigned position, but it caused "extreme pain in neck, hands, shoulder, knees, upper and lower
2 back, with excruciating headaches that last weeks at a time." (FAC at 4). Plaintiff complained to
3 prison officials, including defendant, and asked for "reasonable accommodation or removal from
4 current assignment until suitable position could be found." (Id. at 4-5). No relief was provided, and
5 plaintiff remained in his assigned position. (Id. at 5). Plaintiff alleges that his assignment to that
6 position, despite defendant's awareness of plaintiff's "permanent medical limitations and
7 restrictions," was in blatant disregard of plaintiff's health and safety. (Id. at 7).

8     On March 5, 2015, defendant Blackmon filed a Motion for Summary Judgment ("Motion"),
9 accompanied by a Memorandum of Points and Authorities. Defendant also filed a Separate
10 Statement of Uncontroverted Facts and Conclusions of Law ("Defendant's Statement," Docket No.
11 61-2); a Declaration of Andrew Gibson with attached exhibits, including excerpts from plaintiff's
12 deposition as Exhibit 1 ("Plaintiff's Depo.," see Docket No. 61-4 at 2); a Declaration of D.
13 Valdovinos ("Valdovinos Decl."); a Declaration of A. Yee; a Declaration of C. Blackmon ("Blackmon
14 Decl."); and a Declaration of R. Ruiz ("Ruiz Decl."). In addition, defendant filed a Request for
15 Judicial Notice in Support of Motion for Summary Judgment, seeking judicial notice of "the
16 attached court record and parole board transcript" from plaintiff's January 16, 2013, Initial Parole
17 Board Consideration Hearing and subsequent state court "Motion Requesting De Novo
18 Consideration of Writ." (Docket No. 62).[2] Defendant contends that he is entitled to summary
19 judgment because no triable issues of material fact exist and he is entitled to qualified immunity.[3]

20     Following three extensions of time, on June 24, 2015, plaintiff filed his Opposition to the
21 Motion ("Opp.," see Docket No. 85),[4] accompanied by a Separate Statement of Genuine Issues

---

[2] Defendant's Request for Judicial Notice is **denied** on the grounds that the record is not relevant to any material fact.

[3] The Court's finding that defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim because plaintiff has failed to establish a genuine dispute as to any material fact renders it unnecessary for the Court to reach defendant's contention that he is entitled to a defense of qualified immunity.

[4] In an Order filed March 9, 2015 (Docket No. 67), the Court provided plaintiff with the
(continued...)

3

(Docket No. 91); a Declaration of Samuel Anthony Acinelli, Junior ("Plaintiff's Decl."), with attached exhibits (Docket No. 86); a Declaration of Samuel Anthony Acinelli, Sr. (Docket No. 87); a Declaration of Eleanor K. Acinelli, with attached exhibits (Docket No. 88); a Declaration of Robert Mann (Docket No. 89); and a Declaration of Joseph Placido Moreno (Docket No. 90).

On July 15, 2015, defendant filed a Response thereto, accompanied by a separate "Reply to Plaintiff's Separate Statement" setting forth defendant's objections to plaintiff's evidence; another Declaration of Andrew Gibson,[5] with attached exhibits; a Declaration of Steven Kay; and a second Declaration of Joseph Placido Moreno. (See Docket No. 93).[6]

---

[4](...continued)
requisite notice of the requirements for opposing a summary judgment motion, including the requirement that plaintiff set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents that contradict the facts shown in defendant's declarations and documents and that show that a genuine issue of material fact exists.

[5] On July 30, 2015, plaintiff submitted a "Follow-up Declaration" (Docket No. 94), in which, among other things, he disputes Gibson's assertion contained in his July 15, 2015, declaration (Docket No. 93-2) that plaintiff never supplemented his witness list to include those witnesses from whom plaintiff submitted declarations. On August 3, 2015, Gibson then withdrew his July 15, 2015, declaration (Docket No. 95). On August 20, 2015, plaintiff filed a motion requesting that Gibson's withdrawal of his declaration be denied, arguing that it is "unlikely" that Gibson could have misplaced or lost plaintiff's supplemental witness list, that the declaration is evidence of perjury by Gibson, and that the declaration should be preserved in the record for trial. As the Court has considered and credited, to the extent material, the subject declarations submitted by plaintiff in determining summary judgment, and as resolution of the summary judgment motion does not turn on Gibson's credibility, plaintiff's August 20, 2015, motion (Docket No. 96) is **denied** as moot.

[6] In the declaration that plaintiff filed from fellow inmate Placido Moreno, the inmate states that he "witnessed the pain the duties of this job caused" plaintiff, and that he "witnessed [plaintiff] complain to C.O. Ruiz numerous times." Further, Placido Moreno states that he "witnessed [plaintiff] being threatened several times by the brass that they would put him in the hole for writing them up." (Docket No. 90). In the second declaration from Placido Moreno, the inmate clarifies that he observed plaintiff "complain to Ruiz on three difference occasions," and states that he did not recall plaintiff "complaining to any other officer or correctional staff at Chino regarding his job assignment." Further, Placido Moreno stated that he "never witnessed Officer Ruiz threaten [plaintiff] in any way," and that he "never heard any officer or correctional staff threaten [plaintiff] with discipline for not doing his job." (Docket No. 93-4). To the extent that this second declaration potentially raises an issue concerning the credibility of this witness, the Court credits the truth of the factual contents of the original declaration of Placido Moreno to the extent that relevant assertions therein are based on the personal knowledge of Placido Moreno.

## II.

## **LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Id. at 248. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine issue for trial. See Liberty Lobby, 477 U.S. at 249. Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Consequently, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Liberty Lobby, 477 U.S. at 252. Moreover, summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal citation and quotation marks omitted).

/

/

/

## III.

## **SUMMARY OF MATERIAL FACTS**

Initially, the Court notes that Defendant's Statement sets forth 78 proposed "Uncontroverted Facts"[7] ("SUF") (Docket No. 61-2), each of which plaintiff responded to, contesting in full or part all but 11 of the proposed SUFs (Docket No. 91). In addition, each party adduced multiple declarations, including contradictory declarations from one inmate, Joseph Placido Moreno, Jr. (Docket Nos. 90, 93-4). As noted above, at the summary judgment state, the Court's role is not to weigh the evidence or determine the truth of any matter but, rather, to determine whether there exists a genuine dispute as to any **material** fact. See Liberty Lobby, 477 U.S. at 249. Only disputes over **material** facts, i.e., "facts that might affect the outcome of the suit," are relevant to the inquiry. See id., 477 U.S. at 248. Further, the Court may "disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) (as amended); FTC v. Publishing Clearing House, 104 F.3d 1168, 1171 (9th Cir. 1997) (as amended) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Moreover, as the non-moving party in this Motion, plaintiff may not avoid summary judgment by relying on conclusory allegations unsupported by specific facts, see Taylor, 880 F.2d at 1045, and the Court may drawn inferences in his favor only "*to the extent supportable by the record.*" Scott v. Harris, 550 U.S. 372, 381 n.8, 127 S. Ct. 1769, 167 L. Ed. 686 (2007) (emphasis in original). With these standards in mind, the Court finds the following material facts to be undisputed except where otherwise noted.[8]

Plaintiff, a prisoner of the California Department of Corrections and Rehabilitation ("CDCR"), was incarcerated at CIM from January 17, 2012, to July 23, 2013. (SUF 1-2; Plaintiff's Statement at 2). Plaintiff was housed in "Joshua Hall" at CIM. (SUF 3; Plaintiff's Statement at 2). From

---

[7] Although the numbering on the SUFs only goes to "77," defendant inadvertently used number "67" twice, so the total number of SUFs proposed is 78. (See Response at 2).

[8] It follows that, if a fact is not material to the one claim at issue in this Motion, the Court has not addressed defendant's objections to plaintiff's evidence either supporting or disputing such fact.

approximately January 2012 until around December 2012, defendant Blackmon was employed by the CDCR as the "Assignments Lieutenant" at CIM. The parties dispute the date upon which Blackmon left this position, but it is not disputed that he was the Assignments Lieutenant at the time that plaintiff arrived at CIM in January 2012 until approximately December of that year. (SUF 4-5; Plaintiff's Statement at 2; Response at 4).[9]

As the Assignments Lieutenant, Blackmon's duties included managing inmate work assignments, determining work locations suitable for inmates of various classifications, ensuring compliance with departmental rules and procedures, and attending classification committees to determine inmate work program status. (SUF 6; Plaintiff's Statement at 3; Blackmon Decl. ¶ 3). Plaintiff's Unit Classification Committee "UCC" Hearing was held at CIM on January 30, 2012. (SUF 7; Plaintiff's Statement at 3). The parties dispute whether defendant Blackmon attended this UCC Hearing. Defendant Blackmon states that he does not recall if he attended the Hearing, but he stated that "someone from the Assignment Department always attends the UCC Hearings." (Blackmon Decl. ¶ 4). But the CDCR record of the UCC Hearing does not indicate that any officer from the Assignment Department was present, and Correctional Counselor Valdovinos states that she "would have identified" the name of the "Assignment Lieutenant if" one was "ever in attendance at the UCC hearing." (SUF 8; Valdovinos Decl. ¶ 5, Ex. 6). Plaintiff objects to the exhibit adduced by defendant and argues that someone from the Assignment Department must have been present at the Hearing. Plaintiff, however, points to no evidence that the "man" who identified himself as the "Assignment Lieutenant" at plaintiff's UCC Hearing was Lieutenant

---

[9] The Court sustains defendant's objection to plaintiff's response to SUF 5 to the extent that plaintiff is purporting to assert that defendant stated in his Response to Interrogatory No. 23 that defendant remained in the position as Assignment Lieutenant until July 23, 2013. As noted in Exhibit 2 to an earlier Motion to Compel, defendant listed only Lieutenant Blackmon in response to plaintiff's request to list "any parties who were on duty at the prison assignment [sic] Department at any time during the dates of February 25, 2012, to July 23, 2013." (Docket No. 43-2 at 16). Defendant's response does not specify the dates within the specified period that Blackmon was on duty in this position. In defendant's Response to Request for Admission No. 1, defendant stated the he was Assignment Lieutenant from January 2012 through January 2013. (Plaintiff's Decl., Ex. 4, Docket No. 86 at 24). In Blackmon's Declaration, he states that he was assigned to that position from January 2012 through December 2012. (Blackmon Decl. ¶ 3).

Blackmon. (Plaintiff's Decl. ¶ 6).[10] Further, the parties do not dispute that, during plaintiff's UCC Hearing, it was established that plaintiff was to be placed in the "Support Services 1" work program. (SUF 9; Plaintiff's Statement at 3-4; Valdovinos Decl. ¶ 6). Plaintiff also does not dispute that, on or about February 25, 2012, weeks after his UCC Hearing, he was assigned to a position as "Second Watch Dorm Porter." (SUF 11; Plaintiff's Statement at 4; Plaintiff's Depo. at 62-63, Docket No. 61-4 at 16-17; Plaintiff's Decl. ¶ 10). Because the only Eighth Amendment claim that plaintiff raises against defendant Blackmon in his FAC is that plaintiff's assignment to the position of "Second Watch Dorm Porter" was "outside of [his] medical limitations, restrictions, and disabilities," and that plaintiff requested the "reasonable accommodation [of a] job change to a [Third] Watch Dorm Porter" that was "within his medical limitations" (FAC at 7-8), the Court finds that the disputed issue of whether defendant Blackmon was involved in the initial placement of plaintiff into the "Support Services 1" work program is not material.[11]

The "Dorm Porter" position is a janitorial position that is on the work list for "Support Services 1." (SUF 9, 12; Blackmon Decl. ¶ 5; Valdovinos Decl. ¶ 6; Plaintiff's Statement at 5). The "Dorm Porter" position is considered "light duty." (SUF 13; Plaintiff's Statement at 5;

---

[10] The Court sustains defendant's objection to plaintiff's speculation that the man that he spoke with at the UCC Hearing was defendant Blackmon. (SUF 31; Plaintiff's Statement at 8). Blackmon does not recall attending the hearing (Blackmon Decl. ¶ 4), and plaintiff admitted at his Deposition that he had never met or spoken to Lieutenant Blackmon. (SUF 50; Plaintiff's Statement at 3-4, 11; Plaintiff's Depo. at 60-61, Docket No. 61-4 at 15; Docket No. 86 at 80). The Court will not draw inferences in plaintiff's favor based solely on plaintiff's speculation.

[11] The Court sustains defendant's objection to plaintiff's assertion that "the Assignment Lieutenant" at the UCC Hearing stated "make him a porter." Plaintiff points to no evidence that this "Assignment Lieutenant" was defendant Blackmon, and, as set forth above, plaintiff admitted at his Deposition that he had never met or spoken to Lieutenant Blackmon. Further, because plaintiff testified at his Deposition, and states in his Declaration, that he was not assigned to the job position of "Second Watch Dorm Porter" until February 25, 2012 (Plaintiff's Depo. at 62-63, Docket No. 61-4 at 16-17; Plaintiff's Decl. ¶ 10), plaintiff cannot create a disputed issue of material fact by contradicting his clear and unambiguous deposition testimony to the contrary. See Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (the "sham affidavit" rule should be applied only if the court makes a factual determination that the inconsistency between the deposition testimony and the subsequent affidavit is "clear and unambiguous"), cert. denied, 133 S. Ct. 2026 (2013); Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (a party cannot create an issue of fact by submitting an affidavit contradicting prior deposition testimony without explanation).

Blackmon Decl. ¶ 6; Ruiz Decl. ¶ 7). Plaintiff was assigned to the position as a "Dorm Porter" at Joshua Hall from about February 25, 2012, until he was transferred out of CIM on July 23, 2013. (SUF 11, 16; Plaintiff's Statement at 5; Plaintiff's Decl. ¶ 31). The amount of time that plaintiff reported to his assigned work position during this period is disputed by the parties. (See SUF 11, 16; Plaintiff's Statement at 4-5; Plaintiff's Depo. at 114-16, Docket No. 61-4 at 42; Docket No. 86 at 94). It is undisputed, however, that plaintiff's supervisor while he was assigned to work as a "Second Watch Dorm Porter" was Correctional Officer Ruiz, or at times Officer Adame. (SUF 17, 71; Ruiz Decl. ¶ 6; Plaintiff's Statement at 5-6, 15; Plaintiff's Decl. ¶ 12; Plaintiff's Depo. at 69, 74, 76-77, 83, Docket No. 61-4 at 20, 23-25, 28). Further, it is undisputed that, while assigned as a "Second Watch Dorm Porter," plaintiff did not always "show up" to work, but he was not disciplined for not working. (SUF 26, 30; Ruiz Decl. ¶ 12; Plaintiff's Statement at 7-8; Plaintiff's Depo. at 74, 81, Docket No. 61-4 at 23, 26). In addition, it is undisputed that, during his time at CIM, plaintiff had a permanent medical classification chrono that restricted him to "limited duty" with additional specific functional limitations. (SUF 19; "Exhibit C," Docket No. 61-4 at 68; Plaintiff's Statement at 6).

On or about April 9, 2012, plaintiff filed a CDCR-22, Request for Interview, seeking to be "unassigned" from his duties as a "Dorm Porter." (SUF 33; Plaintiff's Statement at 8-9; Plaintiff's Depo. at 92, "Exhibit H:1," Docket No. 61-4 at 35, 79). The Request was denied on April 30, 2012, by the Assignment Department's office technician, E. Fitzgerald, on the grounds that plaintiff must work with his supervisor concerning his medical restrictions. (SUF 34; Plaintiff's Statement at 9; Plaintiff's Depo. at 92-93, "Exhibit H:1," Docket No. 61-4 at 35-36, 79). It is undisputed that defendant Blackmon was unaware of, and did not respond to, the April 9, 2012, CDCR-22. (SUF 35-36; Plaintiff's Statement at 9).[12]

On or about June 18, 2012, plaintiff submitted another CDCR-22 requesting to be unassigned from his position as "Second Watch Dorm Porter." On June 27, 2012, the request

---

[12] The Court sustains defendant's objection to plaintiff's dispute of SUF 36 on the grounds that plaintiff fails to point to any evidence to the contrary.

9

again was denied by E. Fitzgerald on the grounds that plaintiff had not been "medically unassigned," and that he must work with his supervisor about his medical restrictions. (SUF 38-39; Plaintiff's Statement at 9; Plaintiff's Depo. at 117-18, "Exhibit H:3," Docket No. 61-4 at 43-44, 81). Plaintiff does not dispute that defendant Blackmon did not respond to this CDCR-22. (SUF 41; Plaintiff's Statement at 10). Plaintiff does dispute that defendant Blackmon was unaware of this CDCR-22 on the grounds that Blackmon was interviewed during plaintiff's inmate appeal process. The Exhibit to which plaintiff points, "Exhibit I:3" to his Deposition (SUF 42; Plaintiff's Statement at 10; Docket No. 61-4 at 88-89), reflects that an interview of Blackmon was conducted on August 8, 2012, during the administrative appeal of plaintiff's grievance, raising, in part, the claim that Blackmon had failed to respond to plaintiff's CDCR-22. In the relevant CDCR-22, plaintiff claimed that he could not perform the duties of his work assignment. Blackmon is noted as stating during the interview that the CDCR-22 had been responded to utilizing the proper guidelines by a qualified staff member. Further, Blackmon is noted as stating that it "requires a Classification Committee action to medically un-assign an inmate." (Docket No. 61-4 at 88-89). In his Declaration, Blackmon states that he never reviewed or discussed plaintiff's CDCR-22 requests with the office technician, but he does not address his participation in plaintiff's administrative appeal. (Blackmon Decl. ¶ 7). Accordingly, the Court finds that the parties dispute the extent of defendant Blackmon's knowledge of plaintiff's June 18, 2012, administrative complaint "concerning the unassigning [sic] of current job assignment as Second Watch Dorm Porter," which assignment was causing plaintiff "extreme pain and suffering." (Docket No. 61-4 at 81).

Plaintiff's "Work Change Applications" that he submitted to prison officials do not indicate why plaintiff wanted to be assigned to a different work position. (SUF 44-46; Plaintiff's Statement at 10-11; "Exhibit P:1," "P:2," Docket No. 61-4 at 116-17). Defendant Blackmon did not review or deny any Work Change Application from plaintiff. (SUF 47; Blackmon Decl. ¶ 7). Although plaintiff disputes this fact, the only grounds that plaintiff states are that, as the Assignment Lieutenant, Blackmon was the "sole signatory on approval or denial" of "job change forms," and that Blackmon has "lied through the majority of this case." Plaintiff, however, points to no factual evidence to

support his assertion that Blackmon has lied. Further, the exhibits of the Work Change Applications to which plaintiff points are not signed by any "Assignment Lieutenant." (Plaintiff's Statement at 11; see "Exhibit P:1," "P:2," Docket No. 61-4 at 116-17). Accordingly, the Court finds that SUF 47 is undisputed.

Defendant contends that Officer Ruiz never told defendant that plaintiff had complained that his work assignment was causing him pain. (SUF 51; Blackmon Decl. ¶ 10; Ruiz Decl. ¶ 17). Plaintiff disputes this as "factually false," but the pages of his Deposition to which he points consist of his speculation that the person he heard, but did not see, tell plaintiff's "floor officer at CIM that where I'm assigned I will stay," was Blackmon. (Plaintiff's Statement at 11; Plaintiff's Depo. at 60-61, 88-89, Docket No. 86 at 80-81, 87-88; see also Plaintiff's Statement at 7 citing Plaintiff's Depo. at 20-22, 77-78).[13] Plaintiff, however, admitted at his Deposition that he did not know what Lieutenant Blackmon looks like and that he had never met or spoken to Lieutenant Blackmon. (Plaintiff's Depo. at 61, Docket No. 86 at 81). Even taking into consideration the Court's obligation to draw inferences in the light most favorable to plaintiff as the nonmoving party, the Court may not draw an inference that is unsupported by **any** factual evidence in the record. See Scott, 550 U.S. at 381 n.8. Accordingly, the Court finds that it is undisputed that Officer Ruiz never told defendant Blackmon that plaintiff had complained that his work assignment caused him pain.

Defendant contends that Counselor Valdovinos never told defendant that plaintiff had complained that his work assignment caused him pain. (SUF 52; Blackmon Decl. ¶ 10; Valdovinos Decl. ¶¶ 7-8). Plaintiff disputes this and asserts that Valdovinos "delivered two CDC-132s to Assignment Department" and that plaintiff was in Valdovinos's office when she called Lieutenant Blackmon regarding the CDC-132 requests. (Plaintiff's Statement at 12). The evidence to which plaintiff points, however, consists of plaintiff's testimony at his Deposition that he contacted Valdovinos about his request for a job change, and she told him: "it was out of her

---

[13] The Court denies as unsupported plaintiff's request for sanctions arising from plaintiff's contention in his Opposition that all of the declarations adduced by defendant, including that of defendant's counsel, contain "intentional deception, perjurious [sic] statements, and falsified sworn claims." (Plaintiff's Opp. at 9).

11

hands, the assignment lieutenant had it, and [he] never heard anymore about it." (Plaintiff's Depo. at 110-11, Docket No. 86 at 93). Plaintiff also cites Exhibit "P-2," but this is plaintiff's Work Change Application dated October 29, 2012, which does not state plaintiff's reason for requesting a work change, and which has no signature. In the absence of any factual evidence in the record to the contrary, the Court finds that it is undisputed that Counselor Valdovinos did not tell defendant that plaintiff had complained that his work assignment was causing him pain.

Plaintiff was not injured as a result of his work assignment. (SUF 62; Plaintiff's Statement at 14). Plaintiff was aware while at CIM that it required a medical professional's opinion and a UCC hearing to "unassign him from work." (SUF 74; Plaintiff's Statement at 15-16). Further, plaintiff was never "medically unassigned" from a particular job or from working. (SUF 20, 77; Plaintiff's Statement at 6, 16; Plaintiff's Depo. at 42, 156, Docket No. 61-4 at 12, 53). Plaintiff does not blame Officer Ruiz, his primary supervisor while assigned as a "Second Watch Dorm Porter," for the harm that he suffered, only defendant Blackmon. (SUF 67(b); Plaintiff's Statement at 15; Plaintiff's Depo. at 117, Docket No. 61-4 at 43).

## IV.

## DISCUSSION

As alleged in the operative pleading, plaintiff's claim against defendant Blackmon is that Blackmon assigned plaintiff to a job as a "Second Watch Dorm Porter" knowing of plaintiff's medical limitations and restrictions, and then, after plaintiff complained to Blackmon that the "job was causing pain and suffering," he acted with "deliberate indifference" in violation of the Eighth Amendment by "forcing plaintiff to fulfill duties" of the assigned job. (FAC at 4, 6-7).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "A prison official is deliberately indifferent to a substantial risk of serious harm to inmates if that official is subjectively aware of the risk and does nothing to prevent the resulting harm." Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001) (citing Farmer, 511 U.S. at 828-29). To be subjectively aware of a risk, the prison "official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Further, plaintiff must allege that, objectively, "he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. "More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to 'perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain.'" Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994)) (as amended, alterations in original); see also Mays v. Rhodes, 255 F.3d 644, 649 (8th Cir. 2001) ("Claims that a prisoner's assigned work exceeded his physical capacity are covered under the Eighth Amendment, and require a showing that an official was deliberately indifferent to a known serious medical need.").

Here, plaintiff and defendant each raise numerous disputed issues concerning the duties of the work position to which they agree that plaintiff was assigned, that of "Second Watch Dorm Porter," the amount of time during which plaintiff attempted to perform his assigned work while incarcerated at CIM, the number of times that plaintiff sought to be assigned to a different work position, plaintiff's medical record, and the difficulties that plaintiff experienced in performing the duties of the assigned position. However, regardless of the factual disputes concerning the degree to which plaintiff was able to perform the tasks of the assigned position and the resulting harm, the only relevant issue before the Court is whether plaintiff submitted sufficient evidence to establish a genuine dispute of material fact as to whether Lieutenant Blackmon was deliberately indifferent to plaintiff's health and safety in plaintiff's work assignment. As is discussed below, the Court finds that plaintiff has failed to adduce sufficient evidence upon which a reasonable jury could find that Blackmon was subjectively aware that the labor required of a "Second Watch Dorm Porter" was beyond plaintiff's physical capabilities or caused plaintiff undue pain. Further, it is undisputed that Blackmon never compelled plaintiff to perform any tasks while plaintiff was assigned to his work position. The Ninth Circuit has held that a prisoner cannot state an Eighth Amendment claim against a prison official for deliberate indifference to his health or safety in a prison work assignment unless the prisoner can show that the official "compelled him to perform

1 physical labor" that was beyond his strength, endangered his health, or caused undue pain.
2 Morgan, 465 F.3d at 1045 (internal quotation marks omitted).  Plaintiff's failure of proof on these
3 elements essential to his Eighth Amendment claim renders all other facts immaterial.  See
4 Celotex, 477 U.S. at 323 ("a complete failure of proof concerning an essential element of the
5 nonmoving party's case necessarily renders all other facts immaterial").

6       Taking disputed facts in the light most favorable to plaintiff, plaintiff has adduced evidence
7 that performing the duties of his assigned work position cased him undue pain.  (See Docket Nos.
8 87-90).  Further, plaintiff has adduced evidence that he filed multiple requests to be assigned to
9 a different work position, and that plaintiff's mother contacted multiple prison officials concerning
10 plaintiff's complaints that his work assignment was causing him undue pain.  (See Docket No. 88).
11 Plaintiff's father testified that plaintiff's injuries "have gotten worse when he has had to work a job
12 requiring physical activity," and that he and his wife have attempted to assist plaintiff by "contacting
13 the proper authorities to remedy this injustice."  (Docket No. 87).  Plaintiff's mother testified that
14 plaintiff's injuries are "aggravated by exertion when working" and that she has made numerous
15 telephone calls, and sent emails and letters to specific prison officials, not including Blackmon,
16 "with complaints that the job assignment was causing [plaintiff] extreme pain and suffering."  The
17 attachments to this Declaration include a letter to a "Ms. Malone," with a long list of those copied,
18 but the list does not include defendant Blackmon.  The only reference to defendant is a one-
19 sentence letter dated December 12, 2012, which is addressed to the attention of "Lt. Blackmon,"
20 but states only that plaintiff's mother intends to sue him for a "violation of the Eighth Amendment -
21 failure to recognize Federal ADA Law."  (Docket No. 88).  In addition, plaintiff speculates in his
22 Declaration that when his supervisor Officer Ruiz "called Assignment Lieutenant explaining
23 plaintiff's Chrono's [] work restrictions," Ruiz was talking to defendant Blackmon.  (Plaintiff's Decl.
24 ¶ 12).  Defendant Blackmon, however, states that he "never spoke with Officer Ruiz, Counselor
25 Valdovinos, or any other person, about [plaintiff's] work assignment or that he had complained that
26 his work assignment was causing him pain."  (Blackmon Decl. ¶ 10).  Officer Ruiz states that he
27 "never told Lt. C. Blackmon, or any other person, that [plaintiff's] work assignment had caused him
28 pain."  (Ruiz Decl. ¶ 17).  Further, Officer Valdovinos does "not recall ever speaking with Lt.

14

Blackmon about [plaintiff] or his work assignment as a dorm porter." (Valdovinos Decl. ¶ 8). Plaintiff's self-serving speculation in his Declaration does not satisfy his burden of adducing admissible factual evidence such that a reasonable jury, when drawing all inferences in favor of plaintiff, could return a verdict in his favor. See, e.g., Nigro, 784 F.3d at 497 (court "can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence"); Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

Accordingly, although the record reflects evidence that plaintiff complained to some prison officials that his work position caused him undue pain, plaintiff has failed to point to any evidence that defendant Blackmon had actual knowledge that plaintiff ever complained that performing the duties of his assigned work position caused him undue pain. Moreover, it is undisputed that (1) Blackmon never acted as plaintiff's supervisor, (2) Blackmon never compelled plaintiff to perform any task while plaintiff was assigned as a "Second Watch Dorm Porter" under the supervision of other prison officials, and (3) plaintiff was never disciplined for failing to perform the duties of his assigned position. Accordingly, the Court finds that no reasonable jury could find that defendant Blackmon ever compelled plaintiff to perform any physical labor that was beyond plaintiff's strength, endangered his health, or caused him undue pain.

Further, although plaintiff cites Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (Plaintiff's Statement at 18), unlike the situation in Jett, plaintiff here points to no evidence that he had any interaction whatsoever with Blackmon. Plaintiff's only evidence that Blackmon was made aware that plaintiff sought to be assigned to a different work position is the interview that was conducted with Blackmon during the First Level Response to plaintiff's administrative appeal. This evidence reflects that Blackmon was interviewed on August 8, 2012, "regarding [plaintiff's] claim that [Blackmon] failed to respond to a CDCR-22." (See Plaintiff's Statement at 10; Docket No. 61-4 at 88-89). As noted in the First Level Response, Blackmon stated that "it requires a Classification Committee action to medically un-assign an inmate," and a review of plaintiff's Central File indicated that plaintiff did "not meet the criteria for either Temporary Medical Un-

assignment [sic] or Medically Disabled status." (Docket No. 61-4 at 88). Further, plaintiff was instructed that he should seek "reasonable accommodations" with his "work supervisor," who, as noted above, was Officer Ruiz and not defendant Blackmon. (Id. at 89). Additionally, it is undisputed that plaintiff never was medically unassigned from a prison work position. Drawing all reasonable inferences from this evidence in plaintiff's favor, the Court finds that the record supports that Blackmon was aware that plaintiff had filed a CDCR-22 claiming that plaintiff could not perform his work assignment as a "Dorm Porter" because of his medical limitations. However, the mere participation of a prison official in an administrative appeal process is an insufficient basis on which to state an Eighth Amendment claim for deliberate indifference against such a defendant. See Peralta v. Dillard, 744 F.3d 1076, 1086-88 (9th Cir. 2014) (en banc) (a prison official whose only role was reviewing internal appeal does not act with deliberate indifference absent knowledge of a substantial risk of serious harm), cert. denied, 135 S. Ct. 946, 190 L. Ed. 2d 829 (2015). Plaintiff cannot avoid summary judgment on his Eighth Amendment claim where the record contains no factual evidence that could lead a reasonable jury to find that Blackmon **knowingly** failed to remove plaintiff from a work position that posed a substantial risk to plaintiff's health or safety. See Matsushita Elec. Indus. Co., 475 U.S. at 587. Further, to the extent that plaintiff may be purporting to contend that Blackmon **should have known** that the duties of a "Second Watch Dorm Porter" exceeded the physical limitations set forth in plaintiff's medical chrono, once again, this contention fails because plaintiff has failed to adduce any evidence that Blackmon was subjectively aware that the duties of plaintiff's assigned work position caused plaintiff undue pain or created a serious risk to plaintiff's health or safety. See, e.g., Farmer, 511 U.S. at 835 ("deliberate indifference" requires "more than ordinary lack of due care for the prisoner's interest or safety"); Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002) ("If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk.").

      Accordingly, the Court finds that defendant Blackmon is entitled to summary judgment on plaintiff's Eighth Amendment claim because plaintiff has failed to adduce any evidence from which a reasonable jury could find that defendant Blackmon was subjectively aware that assigning

plaintiff to, or failing to remove plaintiff from, his work assignment as a "Second Watch Dorm Porter" exposed plaintiff to a substantial risk of serious harm.

## V.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting defendant's Motion for Summary Judgment; and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: August 24, 2015

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.